# Haas *v.* Commerce Trust Co.

## *Assumpsit.*

(Decided October 21, 1915.    69 South. 894.)

1. *Bills and Notes; Variance.*—Since a payee's endorsement of a note is an assignment of his property therein, there is no variance between an allegation of an assignment in writing, and proof of a regular endorsement.

2. *Same; Prima Facie Title.*—Possession of a note duly endorsed to plaintiff prima facie establishes his title.

3. *Same; Validity; Collateral Condition.*—Where the father endorsed the note of his son to enable the son to purchase a half interest in an incorporated business, the fact that one share of the son's stock was transferred to a dummy to comply with the law of the state requiring three stockholders where the business was located, does not show such a violation of the agreement as discharges the father.

4. *Same; Endorsement; Condition.*—In such a case an agreement that part of the salary or drawing account of the son should be paid on his debt to the other party interested in the business, was not a violation of the agreement of the father.

5. *Same; Liability.*—Where a note was endorsed, on the express agreement that it should be used by the son of the endorser in acquiring a half interest in the business, and the payee was cognizant of the arrangement, a breach of the agreement will defeat action on the note.

6. *Same.*—In an action on a note, evidence tending to explain the presence of an endorsement by a showing that it had been pledged as collateral security to such endorser is admissible.

7. *Same; Negotiation.*—The endorsement of a note to a plaintiff or to any bank for collection, does not affect the title of the note where plaintiff had possession of the note.

8. *Appeal and Error; Review; Objection Below.*—The competency of evidence cannot be questioned on appeal, where there was no objection to the evidence in the trial court.

9. *Witnesses; Examination; Scope.*—Copies of letters between the endorser and the payee of a note, as well as the maker, which tend to explain the testimony of the maker, and the endorser, may be introduced on their cross-examination.

10. *Bills and Notes; Actions; Evidence.*—Where the action was to hold defendant on his endorsement of a note given by his son for the purchase price of a half interest in an incorporated business, evidence of the minutes of the corporation showing the reorganization and adjustment of the business after the purchase, is admissible to show compliance with the agreement.

11. *Alteration of Instruments; Materiality.*—Where a note payable in Missouri made no provision as to interest, the blank may be filled in at the legal rate in such state, such act not constituting a material alteration, and parol evidence not being admissible to show ·that a less rate was agreed upon.

12. *Same.*—Where the note made no provision as to interest, and after the delivery thereof, the payee filled in the blank at the legal rate, parol evidence is not admissible to contradict such interest stipulation.

13. *Statutes; Other States; Evidence.*—Where the action was upon a Missouri note, and the legal rate of interest in Missouri was at issue, such legal rate may be shown by the table of interest contained in Acts, 1911, State of Alabama.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Assumpsit by the Commerce Trust Company against J. C. Haas. Judgment for plaintiff. Defendant appeals. Affirmed.

The action is founded upon two promissory notes of $2,000 each, executed by one R. L. Haas, to one Simon Guggenheim, having been executed by the maker and delivered to payee at Kansas City, Mo. They had been previously indorsed at Montgomery, Ala., by J. C. Haas, the father of the maker, and by him forwarded to his son for execution. The notes were given under the following circumstances: R. L. Haas and Guggenheim agreed to purchase jointly an incorporated furniture business in Kansas City, Mo., for $8,000, each to contribute half, and Guggenheim agreed to advance Haas $4,000, to be secured by his note, indorsed by his father, J. C. Haas. It was agreed that $3,000 was to be paid in cash, and the remaining $5,000 should be placed to the company's credit as working capital, and that the unpaid purchase price should be secured by pledging ·750 shares of the capital stock, the remaining 250 shares to be divided equally between the parties, the profits to be shared equally between them. This agreement was fully executed, but as three stockholders were necessary

43—194

under the Missouri statute, each of the parties by agreement transferred one share of stock to Mrs. Guggenheim, and it was further agreed that Guggenheim should draw out a salary of $200 per month, and Haas $125 a month, the other additional $75 to be credited to his account. The business was ultimately a failure, and nothing was paid to Guggenheim on the notes. Guggenheim indorsed one note to C. P. Fresenius, who in turn indorsed to the plaintiff, the Commerce Trust Company. He indorsed the other note to Commerce Trust Company as collateral security for $800, and also transferred it to C. P. Fresenius as to any remainder unappropriated; and C. P. Fresenius indorsed it in blank. Both notes are in possession of the plaintiff, The Commerce Trust Company, to "pay to any bank or banker for collection." Upon the dishonor of the notes for nonpayment they were duly and regularly protested by a notary public, and a certificate thereof was forwarded by mail to defendant indorser. The complaint is against defendant as indorser, and each count alleges that the notes were "duly assigned to plaintiff in writing." The defenses set up by the numerous special pleas may be summarized as follows: (1) Non est factum. (2) The notes were not assigned to plaintiff. (3) Plaintiff is not the owner of the note. (4) Set-off of $1,000 due the maker, R. L. Haas. (5) The notes were indorsed by defendant upon the conditions that the proceeds should be used to purchase a one-half interest in the furniture business for R. L. Haas, and this condition is violated in that: (1) Said proceeds were used for other purposes; and (2) R. L. Haas did not receive a one-half interest in the business. On the issue of non est factum it appeared that the notes provided for interest at 6 per cent., and both the indorser and the maker testified that nothing

was said about interest, and that the figure "6" was inserted in the blank space therefor left for same after the notes were delivered to payee, which was denied by payee. The trial judge instructed the jury that, even though inserted by the payee as charged, it was not a material alteration, as the notes were governed by the laws of Missouri, whose legal rate of interest was shown to be 6 per cent. On the issue as to breach of conditions of the indorser, defendant testified that his agreement with the payee was that the money was to be used to buy the business, and that each of the parties—Guggenheim and R. L. Haas—was to have a half interest therein, and participate equally in the profits. He denied any knowledge of the scheme by which the business was actually bought, and the proceeds of the notes disposed of by Guggenheim and his son. On the other hand, the plaintiff's evidence tended strongly to show that he had such knowledge at the time he indorsed the note. On the issues, the trial judge instructed the jury as follows: "(b) The court charges the jury that if they are reasonably satisfied from the evidence in this case that defendant and Simon Guggenheim agreed that defendant would indorse the note sued on for the accommodation of Reuben Haas, and the proceeds were to be furnished by Simon Guggenheim and used by him as Reuben Haas' one-half for the purchase of the business known as the Kansas City Bedding & Manufacturing Company, and such proceeds were not so used, then their verdict should be for defendant."

"(d) If you are reasonably satisfied from the evidence that defendant indorsed the note upon condition that they should be used for the purpose of paying one-half purchase price of $8,000 for the Kansas City Bedding Company's business, and that Reuben Haas should have

an equal interest with Guggenheim therein, and that if said Guggenheim, or Guggenheim and Reuben Haas, without the consent of defendant, used only $3,000 to pay for the business and put up a portion of the stock as collateral security for the remainder of the purchase price, then I charge you this would be a violation of the condition upon which the indorsements were made, and in that event there could be no recovery in this case."

STEINER, CRUM & WEIL, for appellant.

RUSHTON, WILLIAMS & CRENSHAW, WEIL, STAKELY & VARDAMAN, and MARTIN & MARTIN, for appellee.

SOMERVILLE, J.—The pleadings in this case embracing 15 special pleas, 36 special replications, and several hundred grounds of demurrer, are too multifarious to be considered in detail, and, in view of the simplicity of the evidence, were wholly unnecessary for a fair and orderly presentation of the issues involved. We have analyzed and classified these pleadings with patient care, and we are clear in the conclusion that, whether there was or was not error in any of the various rulings of the trial judge with respect to them, nevertheless, as the material issues were actually tried, there was no error as to the pleadings which was at all prejudicial to the appellant.

(1) 1. A payee's indorsement of a promissory note to a third party is unquestionably an assignment of his property in the note. Hence there was no variance between the allegation of an assignment in writing to the plaintiff and the proof of a regular indorsement to him. —*Wells v. Cody*, 112 Ala. 278, 20 South. 381; *Lyons v. Divelbis*, 22 Pa. 185, 189.

(2) 2. The indorsements on the notes, coupled with the plaintiff's possession of them at the time of suit, prima facie showed title and right of action in the plaintiff. The plea denying the plaintiff's ownership was without support in the evidence, and was properly ignored.

(3) 3. Accepting as true the defendant's contention that one share of the stock delivered to his son was transferred to Mrs. Guggenheim at Guggenheim's suggestion as to its necessity, in order to conform to the laws of Missouri as to the number of stockholders required, this cannot be regarded as a substantial violation of the stipulation upon which the defendant asserts he conditioned his indorsement, viz., that each party was to have half interest in the business.

(4) 4. Nor did the arrangement made between Guggenheim and R. L. Haas as to the amount of salary to be drawn out and used by each—$200 a month by the former, and $125 a month (with a credit of $75 a month to go on his debt to Guggenheim) by the latter—violate the alleged stipulation that the parties should participate equally in the profits.

(5) 5. The only real and material issues of fact developed on the trial of the case were as to whether the defendant stipulated, as a condition to his liability as indorser, that the proceeds of the notes should be directly used for the cash purchase of his son's half interest in the furniture business. The trial judge explicitly charged the jury that if there was such a stipulation, and the funds were not so used, the plaintiff could not recover. There was in fact weighty evidence to show that the defendant was fully advised as to the manner in which the purchase was to be made and the proceeds of the notes to be disposed of, as actually done, and that

he indorsed the notes. The issue was fairly presented to the jury, and they evidently adopted this view of the evidence.

(6) 6. The court properly allowed the plaintiff to ask Guggenheim if the note he indorsed to the plaintiff as collateral security was also subsequently indorsed by Guggenheim to C. P. Fresenius. This was merely for the purpose of explaining the presence of Mrs. Fresenius' indorsement on the back of the note.

(7) 7. The indorsement of these notes by the plaintiff "to any bank or banker for collection" did not, in the absence of evidence showing delivery to and possession by some bank or banker, divert the plaintiff's legal ownership of the notes. There being no such evidence, the notes were properly admitted as the property of the plaintiff.

(8) 8. No objection was interposed to the competency of the notary's certificate of protest to show notice of dishonor to the defendant as indorser, and the trial court cannot be put in error for admitting it, even were it objectionable on any ground.

(9) 9. The introduction of copies of the letters written by Guggenheim to the defendant, and by R. L. Haas to Guggenheim, was proper as part of the cross-examination of the defendant and R. L. Haas, and in explanation of parts of their testimony in chief.

(10) 10. The minutes of the corporation showing the reorganization and adjustment of the business by Guggenheim and Haas were relevant to the issues made by the pleas, and were competent evidence of the facts recited, as to which, indeed, there was no dispute.

(11-13) 11. The notes sued on were executed and became contracts in Kansas City, Mo., and were governed by the laws of that state. Accepting as true the

[Haas v. Commerce Trust Co.]

testimony of the defendant and his son that the notes were delivered to the payee with the rate of interest left blank, and that nothing was said as to the interest, the written provision in the notes for "interest at —— per cent." would unquestionably carry interest at 6 per cent. by implication of law; that being the legal rate of interest in Missouri when not otherwise stipulated. The Missouri rate was properly shown by the Alabama Sessions Acts of 1911. The trial judge properly instructed the jury that, in any view of the evidence, the payee's insertion of the figure "6" in the blank interest space in the notes was not a material alteration, since their legal import was not thereby changed. Nor would parol evidence have been competent to contradict the stipulation for interest, though it seems no testimony was offered having such a tendency.

The giving and refusal of instructions by the trial judge were in harmony with the principles and conclusions expressed in the foregoing opinion; and, there being no error in the record prejudicial to the appellant, the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.